**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EAGLE AIR TRANSPORT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-2604 |
| | ) | |
| NATIONAL AEROTECH AVIATION | ) | |
| DELAWARE, INC., and | ) | Judge Amy J. St. Eve |
| KEVIN WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants National Aerotech Aviation Delaware, Inc. ("Aerotech Delaware") and Kevin Williams ("Williams"), move to dismiss Plaintiff Eagle Air Transport, Inc.'s ("Eagle Air Transport") Third Amended Complaint (the "Complaint").[1] For the reasons set forth below, the Court grants Defendants' motion in part and denies it in part.

## BACKGROUND

In evaluating this motion to dismiss, the Court accepts as true the Complaint's well-pleaded factual allegations and draws all reasonable inferences in favor of Plaintiff. *Stayart v. Yahoo!, Inc.*, 623 F.3d 436, 438 (7th Cir. 2010). This action arises out of Aerotech Delaware's sale of a De Haviland DHC-6-200 aircraft (the "Aircraft") to Eagle Air Transport pursuant to an Aircraft Purchase and Sale Agreement (the "Agreement"). (R. 29, Third Am. Compl. ¶ 18.); (R.

---

[1] Plaintiff Eagle Air Transport filed its initial Complaint on April 11, 2014. (R. 1., Compl.) On May 1, 2014, Eagle Air Transport filed its Amended Complaint after the Court dismissed its original Complaint for failing to properly allege subject matter jurisdiction. (R. 7, Am. Compl.); *see* (R. 6, Apr. 28, 2014 Order.) Eagle Air Transport filed its Second Amended Complaint on June 8, 2014, and then filed its Third Amended Complaint on August 5, 2014. (R. 14, Second Am. Compl.); (R. 29, Third Am. Compl.)

29-1, Third Am. Compl. Ex. A, Agreement.) Eagle Air Transport is incorporated in the state of Illinois and has its principal place of business in Ottawa, Illinois. (R. 29, Third Am. Compl. ¶¶ 1-2.); (R. 38-1, Nelson Aff. ¶ 3.) Aerotech Delaware is incorporated in the state of Delaware with its principal place of business in Hampton, Georgia. (R. 29, Third Am. Compl. ¶ 3.) Defendant Kevin Williams is the general manager of Aerotech Delaware and its sole shareholder, director, and officer. (*Id.* ¶¶ 54-55.) Williams is a citizen of Georgia. (*Id.* ¶ 4.)

In late 2012 or early 2013, Eagle Air Transport posted on LinkedIn that it sought to purchase an aircraft. (*Id.* ¶ 7.) Aerotech Delaware saw the posting and reached out to Eagle Air Transport. (*Id.* ¶ 8.) The parties proceeded to negotiate by phone and e-mail, with Eagle Air Transport in Illinois and Aerotech Delaware in Georgia. (*Id.* ¶¶ 8, 14.) In the spring of 2013, two representatives of Eagle Air Transport traveled to Georgia to view the Aircraft, and Eagle Air Transport and Aerotech Delaware eventually entered into the Agreement for its sale. (*Id.* ¶¶ 15, 18.) Aerotech Delaware sent the draft Agreement via e-mail to Eagle Air Transport, Inc, which executed the contract in Illinois, and then faxed it back to Aerotech Delaware in Georgia. (*Id.* ¶ 21.) Under the Agreement, Aerotech Delaware delivered the Aircraft to Plaintiff in Georgia. (*Id.* ¶ 28.)

Plaintiff alleges that shortly after taking possession of the Aircraft on or about August 28, 2013, it discovered multiple, severe problems that adversely affected the Aircraft's airworthiness and safety. (*Id.* ¶¶ 28, 31.) In September 2013, Aerotech Delaware sent a mechanic to perform work on the Aircraft in Illinois, but he did not successfully fix its problems. (*Id.* ¶ 34.) The next month, Williams personally came to Illinois and performed work on the Aircraft, but he also failed to correct all of its deficiencies. (*Id.* ¶ 35.) Eagle Air Transport then advised Defendants that the Aircraft was not as they had represented and that their work did not fulfill the terms of

the warranty contained in the Agreement. (*Id.* ¶ 36.) Defendants responded by repudiating the warranty, and refusing to perform any further work on the Aircraft. (*Id.* ¶ 36.)

In its Third Amended Complaint, Plaintiff alleges four counts, all based on diversity jurisdiction: 1) breach of the Aircraft Purchase and Sale Agreement; 2) breach of warranty; 3) an alter ego claim; and 4) tortious interference with contractual relations. Plaintiff brings Counts One and Two against both Defendants, and Counts Three and Four solely against Kevin Williams individually. Defendants move to dismiss all four counts based on a lack of personal jurisdiction and subject-matter jurisdiction, and for failure to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), (2), and (6).

## ANALYSIS

Defendants move to dismiss the Complaint on several grounds. First, they argue that under Rule 12(b)(2) the Court does not have personal jurisdiction over either Defendant. Second, they assert that under Rule 12(b)(1) the Court does not have subject matter jurisdiction over this action. Finally, they argue that under Rule 12(b)(6) each of the Complaint's four counts fails to state a claim for relief and thus the Court should dismiss the Complaint in its entirety. The Court will examine each argument in turn.

## I. Personal Jurisdiction

### A. Legal Standard

Because Plaintiff brings this case based on diversity jurisdiction, personal jurisdiction is governed by the law of the forum state. Fed. R. Civ. P. 4(k)(1)(A); *N. Grain Mktg., LLC v. Greving,* 743 F.3d 487, 491 (7th Cir. 2014); *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). A "court's exercise of jurisdiction over the defendant must be authorized by the terms of the forum state's personal-jurisdiction statute and also must comport with the requirements of the

Fourteenth Amendment's Due Process Clause." *Felland*, 682 F.3d at 672 (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)); *see also N. Grain Mktg.,* 743 F.3d at 491-492.

"Illinois law permits its courts to exercise jurisdiction over a person 'as to any cause of action arising from…(1) [t]he transaction of any business within Illinois; or…(7) [t]he making or performance of any contract or promise substantially connected with [Illinois].'" *N. Grain Mktg.,* 743 F.3d at 491 (quoting 735 ILCS 5/2–209(a)(1), (7)). It also contains a catch-all provision which permits a court to exercise personal jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c); *see id*. at 491-92. "Thus, the [Illinois] statutory question merges with the constitutional one." *N. Grain Mktg.,* 743 F.3d at 492. Because the Seventh Circuit has held that in Illinois "there is no operative difference" between the limits of the Illinois Constitution and the United States Constitution, the question is "whether the exercise of personal jurisdiction would violate federal due process." *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citations omitted); *Russell v. SNFA*, 2013 IL 113909, ¶¶ 32-33, 987 N.E.2d 778, 785-86 (Ill. 2013).

For a court to exercise personal jurisdiction over an out-of-state defendant, the defendant must have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Mobile Anesthesiologists Chicago*, 623 F.3d at 443 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction may be either general or specific. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, LLC*, 751 F.3d 796, 800 (7th Cir. 2014) (citing *Daimler AG v. Bauman*, ___ U.S. ___, 134 S.Ct. 746, 753, 187 L.Ed.2d 624 (2014)).

Here, Plaintiff does not allege that general jurisdiction exists, and argues solely that it has established specific jurisdiction. "Specific jurisdiction is available for a suit that arises out of the forum-related activity." *Advanced Tactical*, 751 F.3d at 800. The "court's exercise of specific jurisdiction requires that the defendant's contacts with the forum state relate to the challenged conduct." *Felland,* 682 F.3d at 673. Three requirements exist to establish specific jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* (internal citations omitted).

When a district court determines a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, the plaintiff must make a prima facie case of personal jurisdiction. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010); *GCIU—Emp'r Ret. Fund v. Goldfarb Corp.,* 565 F.3d 1018, 1023 (7th Cir. 2009). Under such circumstances, the plaintiff bears the burden of establishing that personal jurisdiction exists. *See uBID, Inc.* at 423–24; *see also GCIU-Emp'r Ret. Fund*, 565 F.3d at 1023. In determining whether the plaintiff has met its burden, courts resolve all factual disputes in the plaintiff's favor. *See uBID, Inc.* at 423–24; *GCIU–Emp'r Ret. Fund,* 565 F.3d at 1020 n. 1. Here, only Plaintiff submitted affidavits—accordingly, the Court accepts as true any facts contained therein. *See Purdue Res. Found v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 783 (7th Cir. 2003).

### B.    Personal Jurisdiction over Aerotech Delaware

Plaintiff argues that Illinois has personal jurisdiction over Aerotech Delaware for several reasons.[2] First, Aerotech Delaware initiated contact with Plaintiff in Illinois by responding to Plaintiff's posting on LinkedIn that Plaintiff was looking for an airplane, and continued to negotiate with Plaintiff via telephone and e-mail knowing that Plaintiff was located in Illinois. Second, Aerotech Delaware knew that the purchaser of its Aircraft was located in Illinois, and that if the Aircraft needed any warranty work under the Agreement, such work would necessarily take place in Illinois.

"With respect to contract disputes, 'contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum.'" *N. Grain Mktg.*, 743 F.3d at 493 (quoting *Purdue Res. Found.*, 338 F.3d at 781). Instead, courts "conduct a context-sensitive analysis of the contract, examining 'prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other.'" *Id.* Courts in this district look to "who initiated the transaction, where the negotiations were conducted, where the parties executed the contract, and where the defendant would have performed the contract." *Corus Am., Inc. v. Int'l Safety Access Corp.*, No. 09-cv-1422, 2009 WL 5183834, at *3 (N.D. Ill. Dec. 22, 2009) (Grady, J.) (quotation omitted). "So long as a commercial defendant's efforts are purposefully directed toward residents of the forum state, the fact that the defendant hasn't physically entered it does not defeat personal jurisdiction there." *N. Grain Mktg.*, 743 F.3d at 493.

In support of its argument, Plaintiff cites a Seventh Circuit case involving the sale of an aircraft with very similar facts, *Rose v. Franchetti*, 979 F.2d 81 (7th Cir. 1992). In *Rose*, the defendant, a citizen of Rhode Island doing business in Massachusetts, advertised an airplane for

[2] In their briefing, Plaintiff and Defendants primarily address the issue of personal jurisdiction over both Defendants together. For the sake of clarity, the Court addresses the issue of personal jurisdiction with respect to Aerotech Delaware here, and Williams below.

sale. *Id*. at 83. The plaintiff saw the advertisement in Illinois and contacted the defendant, then after a series of telephone conversations purchased the plane and flew it back to Illinois. *Id*. Once there, the plaintiff discovered a large crack in the engine block and filed suit. *Id*. The court held that since the defendant knew that he was dealing with a customer in Illinois, that the plaintiff was transporting the plane back to Illinois where any injury would occur, and that performance of the warranty accompanying the sale would occur in Illinois, the Illinois court properly exercised personal jurisdiction over the defendant. *Id*. at 85.

Here, Plaintiff purchased the Aircraft in Georgia from Aerotech Delaware, which knew that Plaintiff intended to fly the Aircraft back to Illinois where any injury would occur under the warranty. In response, Aerotech Delaware argues that the warranty provision here differed from the warranty provision in *Rose* and did not contemplate performance by Aerotech Delaware in Illinois. The warranty provision in the Agreement states, "The Seller warrants that all Services[3] shall be free from defects in workmanship. This warranty shall expire after the Aircraft, engines or components have been operated for 600 flight hours after the completion of Services or at the expiration of six (6) months after the Closing Date, whichever shall occur last." (R. 29-1, Agreement ¶ 4.2.) Aerotech Delaware argues that because it did not agree to "fix, correct, or repair any issues that arose," and only warranted that the "Services" would be free from defects, the Agreement did not contemplate any performance under the Agreement in Illinois. (R. 39, Def.'s Reply, at 4.)

This argument is not persuasive for several reasons. First, even if Aerotech Delaware did not agree to perform the warranty work itself, it still "contemplated" the potential "future consequences" of communicating with Plaintiff in Illinois with respect to the warranty, and

---

[3] The Agreement does not define the term "Services." It refers to work performed on the Aircraft after the execution of the Agreement and before Defendants delivered the Aircraft to Plaintiff. (*See* R. 29, Third Am. Compl. ¶ 17; R. 34, Def.'s Memo, at 11.)

paying to have work performed on the Aircraft in Illinois.  Second, Aerotech Delaware's argument is belied by the fact that it sent two individuals to Illinois to perform work on the Aircraft when it broke down.  Aerotech Delaware sent a mechanic to Plaintiff's place of business in Illinois to perform work on the Aircraft in September 2013, and then Aerotech Delaware's president himself, Kevin Williams, personally came to Illinois to work on the Aircraft.  (R. 29, Third Am. Compl. ¶¶ 34-35.)  Not only does this support that Aerotech Delaware contemplated the warranty could involve work in Illinois, but it provides additional contacts between Aerotech Delaware and the State.  *See Abbott Labs., Inc. v. BioValve Techs., Inc.* 543 F.Supp.2d 913, 923 (N.D. Ill. 2008) (Pallmeyer, J.) (citing *Wisc. Elec. Mfg. Co. v. Pennant Prods., Inc.*, 619 F.2d 676, 678 (7th Cir. 1980)) (finding that non-resident defendant's visits to Illinois during the course of the contract's performance supported exercise of personal jurisdiction over defendant)).

Further, where the plaintiff in *Rose* responded to the general advertisement posted by the defendant, here Aerotech Delaware reached out to Plaintiff directly with respect to Plaintiff's posting on its LinkedIn account regarding purchasing an airplane.  (R. 38-4, Bartlett Aff. ¶¶ 5-6.) "The question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction." *N. Grain Mktg.*, 743 F.3d at 493 (quoting *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1202 (7th Cir. 1985)).  After several weeks of discussions did not lead to an agreement, Plaintiff and Aerotech Delaware stopped communicating.  (R. 38-4, Bartlett Aff. ¶¶ 7-9.)  Then several weeks later, Aerotech Delaware unilaterally contacted Plaintiff and proposed a new, lower offer to purchase the Aircraft.  (*Id.* ¶¶ 10-12.)  The parties resumed negotiations, which ultimately led to the sale of the Aircraft.  (*Id.* ¶ 13); (R. 38-1, Nelson Aff. ¶¶

5-7.)  As such, this case not only has facts similar to *Rose*, Aerotech Delaware here reached out directly to Plaintiff in Illinois (rather than vice versa), and traveled to Illinois on two occasions to perform work under the warranty.  (R. 38-4, Bartlett Aff. ¶ 6); (R. 29, Third Am. Compl. ¶¶ 34-35.)

Aerotech Delaware also argues that the phone and electronic communications between the parties are the type of "isolated communications" that courts have held do not support personal jurisdiction.  The two main cases cited by Aerotech Delaware for this proposition, however, both found personal jurisdiction over the defendants in factual scenarios similar to the facts here.  In *Mid-America Tablewares*, the Seventh Circuit affirmed the district court's finding of personal jurisdiction where the out-of-state defendant sent communications to the plaintiff over the course of several months and met with the plaintiff in the forum state.  *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1361 (7th Cir. 1996).  The court looked at the totality of the circumstances and held that personal jurisdiction was appropriate because the defendant had "purposefully directed" its commercial efforts towards the plaintiff in the forum state.  *Id*. at 1361-62.  In *Abbott Labs.*, the court asserted personal jurisdiction over the non-resident defendant where the defendant communicated by telephone and e-mail over the course of several months with the Illinois-based plaintiff and the defendant made two visits to Illinois in connection with the negotiation and performance of the contract at issue.  *Abbott Labs.*, 543 F.Supp.2d 913, 924.

Here, Aerotech Delaware specifically reached out to Plaintiff in Illinois, communicated over the course of several months with Plaintiff in Illinois via telephone and e-mail, entered into the Agreement with Plaintiff containing a warranty provision knowing that Plaintiff intended to fly the Aircraft back to Illinois, and traveled to Illinois on two occasions to perform work under

the parties' warranty when the Aircraft broke down. Although representatives of the Plaintiff traveled to Georgia to inspect the Aircraft (R. 29, Third Am. Compl. ¶ 15), Aerotech Delaware had work performed on the Aircraft in Georgia between the execution of the Agreement and delivery (*Id*. ¶ 17), and Aerotech Delaware delivered the Aircraft to Plaintiff in Georgia (*Id*. ¶ 28), those facts do not negate Aerotech Delaware's contacts with Illinois.[4] Under these circumstances, Aerotech Delaware "purposefully availed" itself of doing business in Illinois, and the Court's exercise of jurisdiction over Aerotech Delaware "comport[s] with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673. Accordingly, the Court has personal jurisdiction over Aerotech Delaware.

### C.      Personal Jurisdiction Over Kevin Williams

As a final matter on personal jurisdiction, Defendant Kevin Williams argues that Plaintiff has not sufficiently alleged facts to support the Court's exercise of personal jurisdiction over him individually.[5] The Court notes that Williams makes only a few references to this Court's jurisdiction over him individually (as opposed to its jurisdiction over Aerotech Delaware), and only directly makes this argument in a footnote to the Reply. (R. 39, Def.'s Reply, at 3, n. 2.) The Seventh Circuit has repeatedly held that "perfunctory and undeveloped arguments, and

---

[4] Defendants also argue in a footnote to their Reply that Plaintiff does not present evidence in its affidavits supporting the exercise of jurisdiction over Aerotech Delaware. (R. 39, Def.'s Reply, at 3, n. 2.) This argument appears to be based on Plaintiff's affidavit from its President, Matt Nelson, stating that "National Aerotech Aviation" (rather than National Aerotech Delaware) contacted Plaintiff. (R. 38-1, Nelson Aff. ¶ 5.) Nelson's affidavit, however, goes on to discuss communications between Plaintiff and Kevin Williams, the president of Aerotech Delaware, and the fact that Plaintiff entered into the Agreement with Aerotech Delaware. (R. 38-1, Nelson Aff. ¶¶ 5-7.) Plaintiff's affidavit from Donovan Bartlett also states that "Defendants" first initiated contact with Plaintiff with respect to the Aircraft. (R. 38-4, Bartlett Aff. ¶ 6.) Accordingly, Defendants' argument is not valid. Further, Defendants do not submit an affidavit contesting Plaintiff's factual allegations that they contacted Plaintiff, and at this stage the Court must construe all factual disputes in favor of Plaintiff. *See uBID, Inc.* at 423–24; *GCIU–Emp'r Ret. Fund,* 565 F.3d at 1020 n. 1.

[5] Williams does not argue that the fiduciary shield doctrine prevents the Court from exercising jurisdiction over him. *See In re Teknec, LLC*, 512 F.3d 342, 345 (7th Cir. 2007) (citing *ISI Int'l Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548 (7th Cir. 2001) ("a person who enters a jurisdiction only as an agent does not submit to suit in a personal capacity.")) Accordingly, the Court does not address this argument.

arguments that are unsupported by pertinent authority, are waived." *Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783 (7th Cir. 2014) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)); *see United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014). Defendants focus almost exclusively on making their joint personal jurisdiction arguments described above, and Williams does not otherwise develop an argument or provide support for the proposition that the Court lacks personal jurisdiction over him individually. As discussed, Plaintiff alleges sufficient facts to establish a prima facie case of personal jurisdiction over Aerotech Delaware. Further, Williams does not submit an affidavit contesting any of the facts upon which Plaintiff relies, and the Court must resolve all factual disputes in the Plaintiff's favor. *See uBID, Inc.*, at 423-24; *GCIU-Emp'r Ret. Fund*, 565 F.3d at 1020 n. 1. Accordingly, the Court treats Williams's individual argument as waived, and denies Williams's perfunctory motion to dismiss for lack of personal jurisdiction.

## II. Subject Matter Jurisdiction

Defendants next argue that the Court lacks subject matter jurisdiction over this action because Plaintiff does not have standing to bring its claims. They argue that because the "Agreement" defines the "Buyer" as "Eagle Air Transport" (rather than "Eagle Air Transport, Inc.") and the "Buyer" represents in the Agreement that it is a Delaware corporation (rather than an Illinois corporation), that Plaintiff is not a party to the Agreement.

### A. Legal Standard

"As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). "Because standing is 'not [a] mere pleading requirement [ ] but rather an indispensable part of the plaintiff's case, [it] must be supported in the same way as any other matter on which the plaintiff

bears the burden of proof…'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

There are two distinct types of challenges to subject matter jurisdiction, facial challenges and factual challenges. "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Apex Digital,* 572 F.3d at 443 (7th Cir. 2009) (emphasis in original). "In contrast, a factual challenge lies where the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *Id.* at 444 (emphasis in original) (quotation omitted). Once a defendant proffers evidence that the plaintiff does not have standing to bring suit, "the plaintiff bears the burden of coming forward with competent proof that standing exists." *Id.*

### B. Factual Challenge to Subject Matter Jurisdiction

Defendants present a factual challenge to Plaintiff's standing. While they agree that Plaintiff facially alleges in the Complaint that it was the party that bought the Aircraft, Defendants present a factual challenge based on alleged inconsistencies in the Agreement. (*See* R. 34, Def.'s Reply at 9.) Defendants argue that because the "Agreement" defines the "Buyer" as "Eagle Air Transport" (rather than Plaintiff "Eagle Air Transport, Inc.") and the "Buyer" represents in the Agreement that it is a Delaware corporation (rather than an Illinois corporation like Plaintiff), that Plaintiff must not be a party to the Agreement. Defendants neither submit an affidavit nor identify any other evidence in support of this argument.

In response, Plaintiff submits the sworn affidavit of its President, Matt Nelson, attesting to the following. Defendants contacted Plaintiff, and after negotiations Plaintiff received a proposed contract from Kevin Williams. (R. 38-1, Nelson Aff. ¶5.) Upon reviewing the proposed contract, Nelson notified Williams that he needed to list the buyer as "Eagle Air

Transport, Inc." (*Id*. ¶ 6.)  When Defendants returned the revised contract to Nelson, they mistakenly omitted the "Inc." from "Eagle Air Transport, Inc."  (*Id*. ¶ 7.)  Nelson did not notice this omission, and executed the contract.  (*Id*.)

Plaintiff also notes that although the "Buyer" in the Agreement represents that it is a Delaware company, and a Delaware company named Eagle Air Transport, LLC formerly existed, Delaware cancelled its registration in 2009 before the facts at issue arose.  (R. 38, Pl.'s Resp., at 19; R. 38-3, Ex. C.)  At no point was Plaintiff Eagle Air Transport, Inc. in any way affiliated with the Delaware company Eagle Air Transport, LLC.  (R. 38-1, Nelson Aff. ¶ 14.)  Furthermore, Plaintiff Eagle Air Transport, Inc. wired the purchase money, and Defendants delivered the Aircraft to Eagle Air Transport, Inc.  (*Id*. ¶¶ 9-12.)  Plaintiff also notes that the Agreement lists the Buyer's principal place of business as "3215 E. 1969th Road, Ottawa, Illinois, 61350," which is Plaintiff's principal place of business.  (R. 29-1, Agreement.)  Further, the Agreement lists the Buyer's President as Plaintiff's president Matt Nelson.  (R. 29-1, Agreement.)  Defendants do not submit any evidence to contradict these facts.  Accordingly, the Court is satisfied that it has subject matter jurisdiction over this action and therefore denies Defendants' motion to dismiss on this basis.

### C.       Reformation of the Agreement

As a final related matter, in addressing this issue involving the proper parties to the Agreement, Plaintiff argues in its Response that the Court should reform the Agreement to reflect that the correct Buyer is "Eagle Air Transport, Inc.," an Illinois corporation.  Plaintiff asserts that the parties made a mutual mistake in stating otherwise in the Agreement.  In its Complaint, however, Plaintiff alleges only that, "[t]he contract also contains two mutual mistakes: a) the contract does not include the designation "Inc." after the name Eagle Air; and b)

the contract erroneously states that Eagle Air is a Delaware corporation." (R. 29, Third Am. Compl. ¶ 25.) Plaintiff also does not plead a separate cause of action for reformation of the Agreement. *Id.*

As Defendants note in their Reply, reformation of a contract is an independent cause of action under Delaware law.[6] *See Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 677 (Del. 2013) (holding that a party may bring a cause of action for reformation "that incorrectly transcribes the parties' agreement, so long as the party's conduct does not amount to a failure to act in good faith and in accordance with reasonable standards of fair dealing"); *Envo, Inc. v. Walters*, No. 4156-VCP, 2009 WL 5173807, at *4-5 (Del. Ch. Dec. 30, 2009) (unpublished) (dismissing a cause of action for reformation based on mutual mistake where the plaintiff failed to allege all four required elements: "(i) the terms of an oral agreement between the parties; (ii) the execution of a written agreement that was intended, but failed, to incorporate those terms; (iii) the parties' mutual—but mistaken—belief that the writing reflected their true agreement; and (iv) the precise mistake"). Accordingly, to the extent that Plaintiff seeks to allege a cause of action in the Complaint to reform the Agreement, the Court dismisses it without prejudice because Plaintiff fails to plead the required elements.

## III. Defendants' 12(b)(6) Arguments

Defendants next argue that the Court should dismiss all four counts for failing to state a claim on which relief may be granted under Rule 12(b)(6).

### A. Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is

---

[6] As discussed below, the Court finds that Delaware law applies to the Agreement.

entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quotation omitted). Under the federal notice pleading standard, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true," *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665–66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington No. Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir. 2014).

## B.  Breach of Contract

Defendants argue that Plaintiff's Count I fails to state a claim for breach of contract because Plaintiff fails to allege that Aerotech Delaware did not deliver the Aircraft in an "airworthy" condition on the delivery date.[7] Since Plaintiff only alleges that the Aircraft developed problems well after delivery, Defendants argue that Plaintiff does not state a claim for breach of contract. The relevant provision of the Agreement states that, "[s]ave as expressly provided in this Agreement, the Aircraft is sold to the following specifications: airworthy condition…" (R. 29-1, Agreement ¶ 3.3.) The Agreement also states that "[t]he Aircraft is sold on an "as is" basis (that is in its actual state and condition on the Acceptance Date)." (R. 29-1, Agreement ¶ 4.3.)

---

[7] Defendant Williams does not argue that Counts I and II do not state a claim against him individually. Accordingly, the Court does not address that issue.

In the Complaint, Plaintiff alleges that "[o]n or about August 28, 2013 plaintiff took possession of the aircraft in the state of Georgia." (R. 29, Third Am. Compl. ¶ 28.) "Shortly after taking possession of the aircraft plaintiff discovered that the aircraft as delivered was not as promised and represented by Kevin Williams, was not as specified in the contract, and was not in compliance with FAA regulations. (*Id.* ¶ 30.) "…[P]laintiff had the aircraft thoroughly inspected by an independent certified aircraft mechanic. That inspection turned up multiple and severe problems which adversely affected the airworthiness and safety of the aircraft." (*Id.* ¶ 31.) Plaintiff's allegations sufficiently state a claim that Aerotech Delaware sold the Aircraft in a non-airworthy condition. They "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555. Defendants' argument to the contrary is not persuasive because it ignores the ability of the fact-finder to infer a non-airworthy condition on the delivery date from problems that Plaintiff discovered shortly afterwards.

Further, Plaintiff argues that the Complaint also states a claim for breach of contract by alleging that Defendants breached the Agreement through discontinuing work under its warranty provision. As discussed above, the warranty provision in the Agreement states that, "The Seller warrants that all Services shall be free from defects in workmanship. This warranty shall expire after the Aircraft, engines or components have been operated for 600 flight hours after the completion of Services or at the expiration of six (6) months after the Closing Date, whichever shall occur last." (R. 29-1, Agreement ¶ 4.2.) In the Complaint, Plaintiff alleges in relevant part that, "[u]pon being advised that the aircraft was not as represented and that the work performed by defendants on the aircraft, both before and after delivery, did not fulfill the terms of the warranty, Aerotech Delaware…refused to honor it and refused to perform any further work or services on the aircraft." (R. 29, Third Am. Compl. ¶ 36.) Defendants argue that the terms of

the warranty do not provide for either of the Defendants to perform maintenance work, but that argument ignores the fact that Aerotech Delaware still provided a warranty in the Agreement. Plaintiff alleges sufficient facts to state a claim that Aerotech Delaware breached that warranty.

For these reasons, Defendants' motion to dismiss Count I is denied.

### C. Breach of Warranty

Defendants next move to dismiss Count II of the Complaint. Plaintiff asserts Count II as a breach of warranty claim under a Delaware statutory provision governing the sale of goods. As an initial matter, the Agreement contains a choice of law provision that states that the Agreement "shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to its conflict of law provisions." (R. 29-1, Agreement ¶ 8.6.) In diversity cases, the Seventh Circuit has held that courts should apply the forum state's choice of law rules. *Sound of Music Co. v. Minn. Min. & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007). "Illinois courts generally adhere to a contract's choice of law provisions." *Id.* Since the parties do not dispute that Delaware law applies to the Agreement, Aerotech Delaware is incorporated in Delaware, and the law does not contradict Illinois's public policy, the Court will apply Delaware law to the Agreement. *See id.*

The Delaware statute at issue states:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

6 Del. C. § 2-313(1).

In the Complaint, Plaintiff claims that Defendants provided two warranties in the Agreement. Section 3.3 of the Agreement provides, "[s]ave as expressly provided in this Agreement, the Aircraft is sold to the following specifications: airworthy condition; all Airworthiness Directives are complied with; includes all airframe and engine logbooks, flight manual, weight and balance data, maintenance records, wiring diagrams and other miscellaneous documents and paperwork and loose equipment in the Seller's possession which are considered part of the Aircraft. The Aircraft shall also conform to the specifications described in Schedule 1 to this Agreement." (R. 29-1, Agreement ¶ 3.3.) Section 4.2 of the Agreement states, "the Seller warrants that all Services shall be free from defects in workmanship. This warranty shall expire after the Aircraft, engines or components have been operated for 600 flight hours after the completion of Services or at the expiration of six (6) months after the Closing Date, whichever shall occur last." (R. 29-1, Agreement ¶ 4.2.) Defendants, however, note that § 2-313 of the Delaware code applies on its face only to goods, not services. In its response, Plaintiff seemingly abandons Section 4.2 of the Agreement as a basis for bringing its claim by failing to address Defendants' argument. Accordingly, the Court dismisses Plaintiff's breach of warranty claim with prejudice to the extent that it is based on Section 4.2 of the Agreement.

With respect to Section 3.3 of the Agreement, Defendants agree that Aerotech Delaware warranted that it sold the Aircraft in an "airworthy condition." Although Defendants argue that the Court should dismiss this claim because it is duplicative of Count I, they provide no authority in support of that proposition. As discussed above, Plaintiff pleads sufficient facts in the Complaint to state a claim that Aerotech Delaware sold the Aircraft in a non-airworthy condition. Accordingly, Defendants' motion to dismiss Count II based on Section 3.3 of the Agreement is denied.

**D.      Piercing the Corporate Veil**

Next, Defendant Williams argues that the Court should dismiss Count III of the Complaint.  Plaintiff does not title Count III, but it appears to base this claim on a theory of piercing the corporate veil.  Plaintiff asserts Count III solely against individual Defendant Kevin Williams.

In diversity cases in which plaintiffs allege veil piercing claims, the Seventh Circuit has held that courts should apply the law of the state of incorporation.  *Wachovia Securities, LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012).  Here, Aerotech Delaware is incorporated in Delaware, so the Court applies Delaware law.  (R. 29, Third Am. Compl. ¶ 3.)  "To state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors."  *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 496 (Del. 2003) (affirming lower court's dismissal where plaintiff failed to allege any facts to support such an inference.)  Under Delaware law, courts "will disregard the corporate form only in the exceptional case."  *Winner Acceptance Corp. v. Return on Capital Corp.*, No. 3088-VCP, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008) (unpublished).  Courts consider the following factors:

> (1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; or (5) whether, in general, the company simply functioned as a facade for the controlling shareholder.

*Id*.  They also must find an element of fraud to pierce the corporate veil.[8]  *Id*.

---

[8] Courts within this district have generally held that Rule 9(b) does not apply to veil piercing allegations, unless they are based on a claim of fraud.  *Superkite PTY, Ltd. v. Glickman*, No. 12-cv-7754, 2014 WL 1202577, at *3 (N.D. Ill. Mar. 21, 2014); *Flentye v. Kathrein*, 485 F.Supp.2d 903, 912 (N.D. Ill. 2007).  The Court does not address this issue in further detail as it finds that Plaintiff does not meet even the lower Rule 8(a) standard, as described below.

Here, Plaintiff alleges only that Defendant Kevin Williams is the sole shareholder, director, and officer of Aerotech Delaware, that he is solely responsible for the contract between Plaintiff and Aerotech Delaware, that there is a "unity of interest" between Kevin Williams and Aerotech Delaware, and that Kevin Williams is "the alter ego" of Aerotech Delaware.  (R. 29, Third Am. Compl. ¶¶ 54-55, 57-58.)  Plaintiff does not allege a single fact that bears on the factors listed above.

Plaintiff cites *Wallace v. Wood* for the proposition that "exclusive domination and control" by the controlling shareholder is required to pierce the corporate veil.  *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood,* 752 A.2d 1175, 1183-84 (Del. Ch. 1999) (quotation omitted).  In *Wallace*, however, the court held that "the degree of control required to pierce the veil is exclusive domination and control…to the point that [the corporate entity] no longer has legal or independent significance of its own."  *Id.* at 1184 (quotation omitted).  The court held further that to pierce the corporate veil, "…the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."  *Id.*  The court then granted the motion to dismiss because the plaintiff did plead sufficient facts to justify piercing the veil of the corporate entity at issue.  *Id.*

Again, Plaintiff has not pled any facts showing that Aerotech Delaware does not have independent significance as a corporate entity or that it exists as a vehicle for fraud.  Although Plaintiff argues that it should be allowed to assert this claim so it can pursue discovery to develop this claim further, Plaintiff cannot bring a cause of action without facts to support it.  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) ("complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") Accordingly, the Court dismisses Plaintiff's Count III without prejudice.

### E.    Tortious Interference with Contract

Finally, Defendant Kevin Williams moves to dismiss Plaintiff's Count IV for tortious interference with contractual relations under Delaware law.[9]  "It is well settled that a party to a contract cannot be held liable for breaching the contract and for tortuously interfering with that contract."  *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 884 (Del. Ch. 2009).  Accordingly, to state a claim for tortious interference under Delaware law against an officer of an entity that entered into a contract, a plaintiff must show that the officer "acted outside the scope of [his] authority."  *Id*. at 884-85 (granting corporate officers' motion to dismiss plaintiff's claim for tortious interference with contractual relations where plaintiff did not allege facts showing that officers exceeded the scope of their authority).

Here, Plaintiff does not assert any allegations that Defendant Kevin Williams acted outside the scope of his authority.  Instead, it seemingly seeks to hold Williams liable because he acted on behalf of Aerotech Delaware.  Plaintiff alleges that Williams "personally negotiated the terms of the contract between plaintiff and defendants," and "personally made all decisions as it related to defendants dealings with plaintiff."  (R. 29, Third Am. Compl. ¶¶ 59-60.)  Plaintiff further alleges that Williams "…made the decision to repudiate the warranty and personally notified plaintiff of his decision," and "…made the decision to cease all warranty work."  (R. 29, Third Am. Compl. ¶¶ 61-62.)  Plaintiff does not allege a single fact supporting that Williams acted outside the scope of his authority as a director and officer of Aerotech Delaware.  (*Id*. ¶ 54.)  As such, Plaintiff has not stated a claim for tortious interference with contractual relations under Delaware law.  The Court grants Defendants' motion to dismiss without prejudice as to Count IV.

---

[9] The Court does not reach the question of whether Plaintiff properly brought this claim under Delaware law because even under Delaware law (which Plaintiff asserts applies), as discussed below, Plaintiff's Count IV does not state a claim.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion in part and denies it in part.

DATED:  December 18, 2014

ENTERED

_____
AMY J. ST. EVE
U.S. District Court Judge